[Civ.   No. 312.   Third Appellate District.—May 28, 1907.]

## NEVADA NATIONAL BANK OF SAN FRANCISCO, Respondent, v. BOARD OF SUPERVISORS OF KERN COUNTY et al., Appellants.

IRRIGATION DISTRICT—PAYMENT OF INTEREST ON BONDED INDEBTEDNESS—REFUSAL TO LEVY ASSESSMENT—MANDAMUS—JURISDICTION.—Where the board of directors of an irrigation district have refused to levy an assessment to pay the interest on its bonded indebtedness, and the board of supervisors, after a petition therefor, have refused to levy such assessment, as provided by the act of March 31, 1897, providing for the organization and government of irrigation districts, the superior court of the county in which the irrigation district is situated has jurisdiction to compel the levying of such assessment by the board of supervisors, in the absence of a showing that the office of its board of directors is not within the county.   The presumptions are in favor of the jurisdiction of the court.

ID.—EXPENSE OF LEVY AND ASSESSMENT.—The expense of the levy and assessment, in addition to the annual interest, is a proper charge against the irrigation district.

ID.—RIGHTS OF JUDGMENT CREDITORS TO WRIT OF MANDATE.—A judgment creditor of an irrigation district has the right to call upon its board of directors to pay the judgment, and upon their refusal or neglect to do so, to have recourse to the supervisors, and, upon their refusal to levy an assessment sufficient to pay the judgment, to apply for a writ of mandate to compel such levy.

ID.—RES ADJUDICATA—EFFECT OF JUDGMENT ON ORIGINAL OBLIGATION.— Neither the board of directors, nor the board of supervisors, nor the taxpayers of the district can defend the proceeding in *mandamus* on any of the grounds litigated, or which might be litigated in the action in which the judgment was rendered. The judgment does not create a new obligation, but simply presents, in a different form, the obligation already assumed, and affords the highest sanction of the law to its validity.

ID.—EXCESS OF JURISDICTION—PAYMENT OF JUDGMENT BY SUPERVISORS— NEW TRIAL NOT REQUIRED.—The court exceeded its jurisdiction in directing the supervisors to pay plaintiff's judgment out of the moneys collected by them. Such direction should be stricken out; but the error does not necessitate a new trial.

ID.—CONSTITUTIONALITY OF SECTION 39.—Section 39 of the act in question is not in violation of any provision in the present constitution of the state.

ID.—CONSTRUCTION OF STATUTE—LEVY TO PAY SEVERAL UNPAID IN-STALLMENTS.—One levy may be made under the statute to pay the aggregate amount of installments of interest and principal, which have fallen due in previous successive years.

ID.—JUDGMENT—FAILURE TO PROVIDE FOR OTHER CREDITORS—PRE-SUMPTION.—The judgment in *mandamus* requiring a levy sufficient to pay plaintiff's debt is not erroneous because it fails to provide for other creditors. If there are other creditors whose claims the irrigation district is solicitous to have paid, it is fair to presume that it will not object to an increase in the levy to meet such other obligations.

APPEAL from a judgment of the Superior Court of Kern County.   Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

J. W. P. Laird, C. L. Claflin, H. L. Packard, G. W. Zartman, H. V. Kimberlin, and G. H. Smith, *amicus curiae,* for Appellants.

Heller & Powers, for Respondent.

BURNETT, J.—The judgment or decree from which the appeal has been taken is as follows:

"The alternative writ of mandate issued in this action having been served on defendants and the said defendants having appeared and answered the verified petition of plaintiff and the issues thereby joined having been brought for trial before this court sitting without a jury this 13th day of February, 1905, Messrs. Heller & Powers appearing as attorneys for plaintiff and J. W. P. Laird, Esq., appearing as attorney for defendants and documentary and oral evidence having been introduced and the matter having been argued and submitted, this Court finds that all of the allegations set forth in plaintiff's petition or complaint are true and that the Poso Irrigation District is a municipal corporation organized under the laws of the State of California, and is wholly situated in the County of Kern, State of California, and that the Superior Court of the County of Kern, State of California, in the action therein pending, wherein the above named plaintiff was plaintiff, and the said Poso Irrigation District was defendant, duly gave, made and entered a judgment, requiring said Poso Irrigation District to pay the said plaintiff the sum of $12,262.96, together with interest thereon, at the rate of seven (7) per cent per annum, from the 26th day of August, 1902, and for other purposes, and that said Poso Irrigation District has no funds to be applied to the payment of said judgment and that there is no property belonging to said Poso Irrigation District upon which execution could be levied and that the officers of said irrigation district have refused and neglected to levy an assessment or do or perform any of the acts provided by law, to assess the real property in said district, for the purpose of paying the money due on said judgment; and that the defendant, Board of Supervisors, after petition to do so, to it, has also refused to take the necessary steps to levy an assessment on the property of said district, or to cause any levy of any assessment to be made on the property in said district or to take any steps for the purpose of assessing said district, and collecting the taxes on the property in said district, in order to pay said judgment; and that plaintiff is a party beneficially interested and has no means of collecting its judgment without the action of said defendant, and that

said plaintiff has no plain, speedy, adequate, or other remedy in the ordinary course of law.

"Now, therefore, it is hereby ordered, adjudged and decreed that said defendants immediately proceed to levy an assessment in accordance with law upon the real property within the boundaries of said Poso Irrigation District which is subject to an assessment of said district sufficient to pay said judgment of plaintiff, to wit, the sum of $12,262.96, together with the interest thereon at the rate of seven (7) per cent per annum from the 26th day of August, 1902, and also all expenses incident to the making of said levy and assessment and incident to the collection of said assessment, which expenses shall be estimated by the said defendant, Board of Supervisors, and shall be included within said levy and shall also include plaintiff's costs in this action, which are hereby taxed at $...... against said defendant and which shall be included within said levy and when sufficient money is collected the defendant shall pay to plaintiff from the sum collected whatever amounts are collected on said assessments until said plaintiff shall be paid the said amounts hereinbefore referred to, to wit, the sum of $12,262.96, together with interest thereon at the rate of seven (7) per cent per annum from the 26th day of August, 1902, and the costs of suit herein.

"And it is further ordered, adjudged and decreed that a peremptory writ of mandate shall be issued to said defendants commanding them to forthwith do the acts herein ordered that they shall do, and that a return day be inserted in said writ as on or before the 15th day of September, 1905.

"PAUL W. BENNETT,

"Judge of the Superior Court."

The action is based upon the provisions of section 39 of "An Act to provide for the organization and government of irrigation districts, approved March 31, 1897," which is in the following language:

"Sec. 39. The board of directors shall then levy an assessment sufficient to raise the annual interest on the outstanding bonds, and in any year in which any bonds shall fall due must increase said assessment to an amount sufficient to raise a sum sufficient to pay the principal of the outstanding bonds as they mature. The secretary of the

board must compute and enter in a separate column of the assessment-book the respective sums, in dollars and cents, to be paid as an assessment on the property therein enumerated. When collected, the assessment shall be paid into the district treasury and be apportioned to the several proper funds.

"In case of the neglect or refusal of the board of directors to cause such assessments and levies to be made as in this act provided, then the assessment of property made by the county assessor and the state board of equalization shall be adopted, and shall be the basis of assessment for the district, and the board of supervisors of the county in which the office of the board of directors is situated shall cause an assessment-roll for said district to be prepared, and shall make the levy required by this act, in the same manner and with like effect as if the same had been made by said board of directors, and all expenses incident thereto shall be borne by such district. In case of the neglect or refusal of the collector or treasurer of the district to perform the duties imposed by law, then the tax collector and treasurer of the county in which the office of the board of directors is situated must, respectively, perform such duties, and shall be accountable therefor upon their official bonds as in other cases."

The bonded indebtedness herein involved was incurred prior to the enactment of said statute, but this circumstance is unimportant in view of the fact that the act of 1889 passed prior to the issuance of the said bonds and amending the act of 1887, known as the Wright Irrigation Act, contains a provision identical, as far as the question before us is concerned, with said section 39 of the act of 1897. The judgment herein is vigorously assailed by numerous counsel, including a learned "friend of the court," and we have examined with care the points and cases to which our attention has been directed, and we shall proceed to state our views thereon in the order in which the various propositions are advanced in the briefs.

The position of appellants, as stated by counsel, is that the judgment must be set aside and the writ vacated, because:

"1. The petition upon which the writ is based is wholly insufficient to give the court jurisdiction to issue the peremptory or any writ herein.

"2. The court exceeded its authority and jurisdiction in its direction to the board of supervisors by said writ:

"(a) In directing a levy and collection for plaintiff's costs expended in the present action.

"(b) In directing a levy for expenses to be incurred in such levy and collection.

"(c) In directing said board to estimate such expense for the purpose of levy and collection.

"(d) In directing said board to pay over to said plaintiff, when collected, the amounts due it on its said judgment.

"3. The court exceeded its jurisdiction in directing said board of supervisors to make levy to pay said judgment.

"4. That section 39, upon which this proceeding is based, is unconstitutional and void."

In addition to the foregoing, the brief filed by *"amicus curiae"* presents specifically these considerations: "1. Upon the failure of the board of directors or of the board of supervisors, in any year, to levy an assessment for the interest, or the interest and installments of principal, falling due in that year, its power ceases. In other words, the act does not confer upon the directors or the board the power to make a general assessment for the aggregate of indebtedness accruing for the previous years, or, as in this case, for a period of sixteen years. The power, if it exists, can only be to make separate annual assessments for each year based on the values of that year; for otherwise the obligations of the parties would be varied and the act would be unconstitutional. *But this, from the nature of things, is impracticable, at least after the lapse of a year or two, and it is, therefore, submitted that the provision of the amendment of 1889, conferring the power of assessment upon the board of supervisors, is, on this account, a mere brutum fulmen, and practically void.* 2. By the provisions of the statute the taxes collected constitute a common bond fund for the benefit of all the creditors and all have a common interest in it. . . . A suit, therefore, to dispose of this fund cannot be maintained without making the others parties, or suing for their common benefit. (Code Civ. Proc., secs. 378, 379, 382, 389, and *Meyer* v. *City of San Francisco,* 150 Cal. 131, [88 Pac. 722].) 3. If in this state the equitable doctrine as to laches be held to apply to proceedings of the court generally (*Grain* v. *Aldrich,* 38 Cal. 514, [99 Am. Dec. 423]), a very extreme case of laches is here presented."

In support of their first proposition it is urged by appellants that the petition for the writ of mandate is fatally defective in that it does not appear therein that the office of the board of directors of the irrigation district is situated in Kern county where the suit was brought.   The contention is based upon the language of said section 39 that ''the board of supervisors of the county in which the office of the board of directors is situated shall cause an assessment,'' etc.   There was no corresponding allegation nor finding in the case at bar, and it is claimed that this is jurisdictional.   As far as the absence of any finding is concerned, no such issue was presented, and it is hardly necessary to cite authorities to the point that the findings must be confined to the issues made by the pleadings.   But appellants are wholly at fault in their claim that the want of jurisdiction is disclosed by the allegations of the petition.   They have entirely mistaken the rule as applied to the jurisdiction of courts of record.   The presumptions here are in favor of jurisdiction and not against it.   There can be no question that under the authority with which superior courts are clothed by the constitution, the superior court in and for Kern county, in the exercise of its general powers, had jurisdiction to entertain an application for a writ of mandate against the supervisors of that county. If there were any exceptional circumstances which, if disclosed, would devest the court of jurisdiction, in the absence of any allegation concerning them in the complaint, the burden is upon the defendants to present them.   Since it does not affirmatively appear that by reason of the peculiar condition suggested the court did *not* have jurisdiction, by virtue of its general authority the presumption must be indulged against appellants' contention.   But again, it is manifest that the provision was intended for a case where the irrigation district comprised land in more than one county.   Here it appears that it is confined entirely to Kern county.   There seems to be no merit in this contention, and we have probably devoted to it more attention than it deserves.

In the specification of particulars wherein it is alleged the court exceeded its authority in its direction to the board of supervisors, exception is taken to that portion of the decree providing for the costs of the present action and expenses to be incurred in the levy and collection of the judgment.   It is insisted that said section 39 limits the power of the board

of directors of the district to the levy of an assessment sufficient to raise the annual interest on the outstanding bonds, and in any year in which any bonds shall fall due to increase such assessment to an amount sufficient to pay the same as they mature, and that the delegation of authority to the board of supervisors cannot be more comprehensive than the authority conferred upon the board of directors in the first instance. The consideration of the costs of the present action may be eliminated, as the record shows that no amount was awarded for costs. The expenses of the levy and assessment would seem to be a legitimate portion of the burden to be borne by the property owners in whose behalf the bonded indebtedness was incurred. In fact, said section 39 makes provision for it in this language: ''and all expenses incident thereto shall be borne by such district.'' If we understand the position of appellants, it is that other provision is made for said expenses in case of the levy by the board of directors, and since there is a delegation of power to the supervisors, their authority is limited to the method pointed out for the directors to pursue. Of course, the act contemplates that the board of directors will do its duty, and ample provision is made in detail for incurring and liquidating a bonded indebtedness. But we do not understand that in the technical sense the authority conferred upon said directors is sought to be delegated to the board of supervisors. Rather is it true that the board of directors is empowered to bind the district by taking certain steps, and the authority of the said board to liquidate an indebtedness must be exercised in the manner pointed out. But in case of its refusal or neglect to act, then the board of supervisors is granted directly by the legislature the power to levy an assessment to provide not only for the payment of the amount due but also for the expense of said levy. The statute does not expressly provide that the expense shall be included in said levy, but it is fairly implied, and any other construction seems unreasonable. The context clearly shows, we think, that in this way the expenses ''shall be borne by the district.''

The case of *Boskowitz* v. *Thompson,* 144 Cal. 724, [78 Pac. 290], cited by appellants, is not in point. That was not a case where the directors refused to act. It was a suit to enjoin the collection of an assessment, and no such question was considered as is involved here in reference to the authority

of the board of supervisors in the premises. The important point decided therein is shown by the following quotation: "A court of equity, as such, in the absence of statutory authority, has no jurisdiction to enforce a lien that is created by statute, for the enforcement of which the statute has provided a mode. The enforcement of the lien in such case can be only in the mode provided by the statute." It was also held that the court should have determined the validity of the assessment which it was sought to collect. There is nothing in that case inconsistent with our position here, as we hold that the court below directed the board of supervisors to follow the mode that is at least implied by the statute. The objection that the board of supervisors is without authority to estimate the expenses of levying and collecting the assessment is also without persuasive force. As suggested by respondent, no one is presumably better fitted to make the estimate than the supervisors, and we think it is implied that they should do so when an emergency arises such as in the case at bar.

The position taken by appellants that the lower court exceeded its jurisdiction in directing the board of supervisors to pay over to the plaintiff from the sum collected a sufficient amount to satisfy plaintiff's demand seems to be in accord with the statute. Respondent rather concedes that the judgment is erroneous in this respect, but claims that it "does not affect the validity of other portions of the decree," and that the decree can be modified by striking out that provision, leaving other portions of the decree in full force and effect. Since the act provides in the first instance that the tax collector and treasurer of the district shall collect and receive the money, and "in case of neglect or refusal of either of them to perform the duties imposed by law, then the tax collector and treasurer of the county in which the office of the board of directors is situated must respectively perform such duties, and shall be accountable therefor upon their official bonds as in other cases," and as there is no authority to depart from the provisions of the act, the portion of the decree complained of should be stricken out. There is no good reason, though, why this should necessitate a new trial.

We cannot see any merit in appellants' contention stated by them as follows: "The petition to the board of supervisors as well as the writ prays that a levy to pay the judg-

ment therein set out be made by said board of supervisors in conformity with the act in question, and more particularly in conformity with subdivision 39 thereof. As we have already pointed out, section 39 relates specially to interest on outstanding bonds. *The decree and the writ directs the levy to pay a judgment.* The original contract between plaintiff and the district is so completely merged in the judgment, in a new form of contract, that the court cannot see that it is for interest on outstanding bonds, and therefore payable by the provisions of section 39.'' A large number of cases is cited in support thereof, but their effect seems to have been misapprehended. The quotation made by appellant from *Taylor* v. *Root,* 4 Keyes (N. Y.), 344, may be accepted as a fair expression of what is held in all of them: ''The cause or consideration of the judgment is of no possible importance; *that is merged in the judgment.* When recovered the judgment stands as a conclusive declaration that *the plaintiff therein is entitled to the sum of money recovered.* No matter what may have been the original cause of action the judgment forever settles the plaintiff's original claim. . . . This assent may have been reluctant, but in law it is an assent, and defendant is estopped by the judgment to dissent. *Forever thereafter, any claim on the judgment is setting up a cause of action on the contract.''* It is hard to perceive how appellant can obtain any comfort from the quotation. It is too well settled to be controverted that a judgment does not create a new obligation. It simply presents in a different form the obligation already incurred, and besides, it affords the highest sanction of the law to the validity of the obligation.

It seems to be established by the authorities that the proper course to pursue when municipalities refuse to pay their bonds is by an action at law to establish the validity of the bonds and the amount due thereon, and then to apply for a writ of mandate to compel the proper authorities to raise what is required to satisfy the debt by the assessment and levy provided by statute. The following cases cited by respondent so hold: *Heine* v. *Commissioners,* 19 Wall. 655; *Herring* v. *Modesto Irr. Dist.,* 95 Fed. 705, 710; *Marra* v. *San Jacinto and Pleasant Valley Irr. Dist.,* 131 Fed. 780, 789, and *Board of Supervisors of Riverside County* v. *Thompson,* 122 Fed. 860, [59 C. C. A. 70]. The latter case was similar to the one at bar,

involving the same statute, and from it the following quotation seems germane:

"The present proceeding is not a new action to establish the rights of the defendant in error as against other parties. It is a proceeding in the nature of an execution to enforce the judgment already rendered. The right of the defendant in error to call upon the board of directors to enforce the judgment was established in that judgment as well as his right to have recourse to the board of supervisors in case of the refusal or neglect of the board of directors to make the levy and assessment. Neither the board of directors nor the board of supervisors nor the taxpayers of the Perris Irrigation District can be heard to defend the present proceeding on any of the grounds litigated, or which might have been litigated, in the former action."

The principal attack directed against the judgment is based upon the ground that said section 39 is unconstitutional for these reasons: 1. Because it delegates the power to assess and collect taxes in the district to other than corporate authorities thereof; 2. Because it directs the assessment of property within the district to be made by persons not representatives of the district; 3. Because it delegates to a legislative officer the power to perform the purely executive functions of the assessor. In this connection attention is directed to section 12, article XI, and section 10, article XIII, of the constitution of this state and numerous decisions of our supreme court. Said section 12, *supra*, provides that "the legislature shall have no power to impose taxes upon counties, cities, towns or other public or municipal corporations or upon the inhabitants or property thereof, for county, city, town or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes," and said section 10 provides for the assessment of property where it is situated "in the manner prescribed by law."

As pointed out by respondent, many of the decisions cited by appellant were rendered under the constitution of 1849, which contained the following provision: "Taxation shall be equal and uniform throughout the state. All property in this state shall be taxed in proportion to its value, to be ascertained as directed by law; *but assessors and collectors of town, county and state taxes shall be elected by the qualified*

*electors of the district,* county or town in which the property taxed for state, county or town purposes is situated.'' If that provision were a part of the organic law now it is probable that said section 39 would be unconstitutional, in so far as it provides for the steps to be taken by the board of supervisors, but under the present constitution the power to assess and collect taxes is conferred upon ''the corporate authorities,'' with the restriction that the assessment shall be made where the property is situated and in the manner prescribed by law. We cannot see that said section 39 is in conflict with this requirement. The board of supervisors is a ''corporate authority'' of the district, and the assessment and levy according to the terms of the decree are to be made as ''prescribed by law.''

In the case of *McCabe* v. *Carpenter,* 102 Cal. 470, [36 Pac. 837], it is said: ''It is contended that the law (referring to a statute establishing high schools) is unconstitutional, in that it authorizes the county superintendent of schools to furnish to the board of supervisors an estimate for the tax, and makes it the duty of the board to proceed to fix a rate which will realize the amount, thus leaving the amount of the tax *wholly to the discretion of an executive officer, and leaving no discretion in the board.''* The conclusion of the court, announced by Commissioner Temple, was: ''But, since the power to levy a tax is purely legislative, it would seem to follow that the power cannot be vested in any other authority of the local corporation than the body in which is vested the legislative power of such municipal corporation. At all events it could not vest such power in an executive officer of such corporation.''

Here the board of supervisors is authorized to make the levy in case of the refusal of the directors to act, the statute in question makes the board a part of the ''corporate authority'' of the district, the board is undoubtedly a legislative body; it does not make the assessment, but bases the levy upon the assessment made by the county assessor, and we fail to see how there is any violation of the provisions of the constitution, especially when, as here, the district is confined to one county.

In *Board of Education* v. *Board of Trustees,* 129 Cal. 604, [62 Pac. 173], there is an interesting discussion of article I, section 12, of the constitution, and it is said by the court

through the commissioner, who is the *amicus curiae* herein; "These provisions apply to all kinds of public or municipal corporations, or we may say to all municipalities and quasi municipalities. These differ greatly in their organization. In some, as. in cities generally, the powers of the government are distributed into separate departments; in others all the powers of the municipality are vested in one body—as, e. g., in the board of supervisors of a county, the board of trustees of a school district, etc. In the latter case the board of supervisors or board of trustees, or other governing body, constitutes the corporate authority of the municipality, in which might be vested the power to impose taxes." So it may be admitted that in the first instance the duty here is cast upon the board of directors of the district to make the levy, but in case of its refusal to act, the board of supervisors constitutes the legislative corporate authority to supply the omission. The power of the legislature is not exhausted when it confers the authority upon the directors, but it may also authorize the supervisors to perform a similar function in certain contingencies. This it has done. It would seem just and reasonable that this power should be lodged in some body outside of the board of directors of the district to meet such an emergency as is here presented, where, according to the findings of the court, said directors have repudiated a legal obligation and have endeavored to prevent its enforcement.

There seems to be no decision of the supreme court passing directly upon the constitutionality of the proceeding herein involved, but an application of the principles so clearly enunciated in the able opinion of Mr. Justice Harrison in the leading case of *In re Madera Irr. Dist.*, 92 Cal. 296, [27 Am. St. Rep. 106, 28 Pac. 272], wherein the Wright irrigation law is upheld, in our opinion leads to the conclusion that said section 39 is not obnoxious to the constitution. In that case it is said: "Whenever a special district of the state requires special legislation therefor, it is competent for the legislature, by general law, to authorize the organization of such district into a public corporation, with such powers of government as it may choose to confer upon it. It is not necessary that such public corporation should be vested with all governmental powers, but the legislature may clothe it with such as in its judgment are proper to be exercised within and for the benefit of such district." And it was held that these corporations

are mere agencies of the state in local government; that they possess only the powers conferred by the legislature, and that it was the purpose of the constitution to leave in the hands of the legislature full discretion in reference to the government of said corporations. In the exercise of this discretion the legislature has conferred upon the legislative body of the county a certain supervisory authority over the district. This seems to be a reasonable provision in furtherance of the design of the framers of the constitution. As the section, when fairly construed, requires the board of supervisors to base the levy upon the assessment of the county assessor, there would seem to be no force in the contention of the appellant that the property owners have no opportunity to be heard to correct any defects in the assessment.

The most serious objection, probably, is the one made by the *amicus curiae* "that an annual assessment upon· the real property in the district is the exclusive mode provided by the statute for the payment of the principal of the bonds authorized by the statute to be issued." In this connection he cites the case of *Merchants' Bank* v. *Escondido Dist.*, 144 Cal. 329, [77 Pac. 937]. It is therein stated: "The act providing for the organization of the district, and the organization of the district under the provisions of the act by the votes of the electors cannot be otherwise regarded than as a contract between the state and the individuals whose property was thereby affected." The soundness of that proposition would scarcely be questioned by anyone. It is further stated that: "The burden thus imposed was that the bonds issued under the act should be paid by revenue derived from an annual assessment upon the real property of the district, and that their lands 'should be and remain liable' for such assessment, and this implied that this should be the extent of the burden. But by the amendatory act the board of directors is authorized, without the consent, or even the knowledge, of the land owners, to pledge or hypothecate the property acquired with their money." Hence it was held that the amendment would deprive the land owners of their property without due process of law, and was also a violation of the inhibition against impairing the obligation of contracts, since the property owners were only liable "for continued assessments until the balance of the bonds shall be paid." No fault can be found with that decision as applied to the facts of the case. The amend-

ment held unconstitutional was enacted after the issuance of the bonds, and it is too clear for argument that it gave the bondholders security that was not provided by the law at the time the obligation was incurred by the district, and was, therefore, in violation of the terms of the contract between the debtors and creditors. The case is in point here if it can be shown that the method provided for the collection of the debt adds to the property owners an additional burden to what was imposed by the statute at the time the bonds were issued. But, as we have seen, the statute has not been substantially changed, and so the question resolves itself into one as to the proper construction of said section 39. The statute, no doubt, contemplates annual assessments, as it is constructed upon the theory that the board of directors will do its duty, but it does not prescribe that this shall be the exclusive method of raising the money to pay the bonds.

The argument made by respondent is substantially this: The board of directors of the district is not required to levy the assessment at any particular date, but must make it after the equalization of the assessment made by the assessor of the district. This levy by said board may be as late, then, as the end of the fiscal year, and hence it could not be said to be in default till the end of the year, and hence the powers of the supervisors could not be invoked till after that time. The power of the board of supervisors must, therefore, be exercised in making the levy for the payment of interest coupons or installment coupons which matured in a previous year. Furthermore, the statute does not provide the time when the levy shall be made by the supervisors, and there is nothing therein inconsistent with the position that one levy may be made for the payment of the aggregate amount of installments of interest and principal due in successive years.

The contention of the *amicus curiae* is: ''If the power still exists in the directors or supervisors to make any assessment and levy, it can only be to make several assessments for each year, and each assessment must be of the values of the lands of the district in that year.'' This, he contends, is impracticable, and hence he would have the court reach the conclusion that there is no method provided for the payment of the debt, and the bondholders are without redress.

We are not inclined to consider the law so impotent as is implied by appellants' argument. We hold that the bur-

dens of the property owners have not been increased, since they incurred the obligation to pay these bonds. The statute, in our opinion, does not expressly nor by implication prohibit the method adopted herein for the collection of the money due. In fact, the forbearance to sue for several years, and the use of one levy instead of many constituted a favor to the debtors, and tended not to increase but to reduce the burden of the property owner.

We fail to see any force in the contention that the judgment is erroneous because it makes no provision for other creditors. The debtor should hardly be allowed to raise this question when it appears that the amount claimed is due the creditor who has brought the suit. Again, there is nothing to show that the other bonds issued have not been paid, or that there is any other creditor who desires to participate in the fund. If there are other creditors whose claim the appellants are solicitous to have paid, it is fair to presume that respondent will not object to an increase in the amount of the levy so as to meet the other obligations of the district.

The question of laches suggested by appellants is disposed of by the case of *Cahill* v. *Superior Court,* 145 Cal. 42, [78 Pac. 467]. We think the circumstances detailed in the petition for the writ excuse the delay and show that no prejudice has been caused thereby to appellants.

The court below is directed to modify the judgment by striking therefrom the following: "And when sufficient money is collected, the defendant shall pay to plaintiff from the sum collected whatever amounts are collected in said assessments until said plaintiff shall be paid the said amounts hereinbefore referred to, to wit, the sum of $12,262.96, together with interest thereon at the rate of seven per cent per annum from the 26th day of August, 1902, and the costs of suit herein," and as so modified the judgment is affirmed.

Hart, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 27, 1907.