## L. A. KAUFER v. JAMES E. FORD.[1]

### January 18, 1907.

### Nos. 14,936—(126).

**Removal of County Seat.**

A petition for the removal of the county seat of Red Lake county was dismissed by the board of county commissioners, when presented to it for action, without a consideration of its merits, on the ground that, because of certain defects in the proceedings leading up to its presentation, the board had no jurisdiction to entertain the same. Immediately thereafter proceedings in mandamus were commenced against the board by a taxpayer and legal voter, on behalf of himself and all other legal voters of the county, to compel the members thereof to reconvene and hear and determine the petition upon its merits. Issue was joined, and all questions affecting the jurisdiction of the board to proceed in the matter were raised by the pleadings. Judgment was finally rendered therein to the effect that the board had full and complete jurisdiction to hear the petition upon its merits, and its members were commanded to convene on the eleventh day of June, 1906, then and there to consider and determine whether it had the requisite number of signers to justify calling an election to vote upon the proposition, and, if so, to certify to the county auditor accordingly. Pursuant to the commands of the judgment, the board convened at the time stated, considered the petition upon its merits, found it in sufficient compliance with the statutes, and directed the auditor of the county to give notice of an election to vote upon the proposition, as required in such cases by the statutes. Thereafter this action was brought to restrain and enjoin the auditor from complying with the directions of the board, on the ground that the board had no jurisdiction to act in the matter, the grounds assigned being those which prompted the board originally to dismiss the petition, and, further, that the court below had no authority, by the judgment in the mandamus proceedings, to direct the commissioners to meet at a special time, without further providing for the notice required to be given in such cases by section 396, R. L. 1905. It is *held:*

**Former Judgment Conclusive.**

1. That the judgment in the mandamus proceedings was final and conclusive upon all questions affecting the jurisdiction of the board to

[1]Reported in 110 N. W. 364.

hear and determine the petition upon its merits, and those questions cannot be further litigated in this or any other action.

**Voters of County Concluded.**

2. That proceeding was brought by a legal voter of the county, on behalf of himself and all other legal voters, and the judgment therein is conclusive as to all legal voters of the county upon all issues which were or might have been litigated therein; it not appearing that it was obtained by fraud or collusion.

**Judgment Invalid in Part.**

3. The trial court exceeded its authority in commanding the board ·to convene on a date named, then and there to determine the merits of the petition, without further requiring notice to the voters of the county, as required by section 396, R. L. 1905, and to this extent the judgment is invalid on its face.

**Certificate of Commissioners.**

4. No valid certificate by the board of county commissioners to the effect that a proper petition has been filed can be issued by the board until after a hearing duly had, pursuant to the notice required by the statute referred to.

Appeal by plaintiff from an order of the district court for Red Lake county, Watts, J., dissolving an injunction restraining defendant, as county auditor of Red Lake county, Minnesota, from making an order fixing the time of holding a special election, pending the entry of final judgment. Order limited and reversed.

*T. J. Knox, F. A. Grady,* and *Chas. E. Boughton,* for appellant. ·
*A. A. Miller,* for respondent.

BROWN, J.

The facts in this case are as follows: In January, 1905, certain persons, legal voters of Red Lake county, gave notice, under and pursuant to section 647, G. S. 1894, that on February 11, of that year they, with other legal voters, would begin the circulation of a petition calling for an election to change the county seat from Red Lake Falls to Thief River Falls. Thereafter, and on April 11, 1905, a petition in proper form, signed by a large number of citizens of the county, was presented to the county auditor, upon which that official was requested to call a special meeting of the board of county commissioners, in accordance with the requirements of the statutes, to consider and act upon the

same. Acting under and pursuant to the duty imposed by law, the county auditor duly called a special meeting of the board to meet at the courthouse on June 5, 1905, to act upon the petition. Pursuant to this call, notice of which was given as required by statute, the board of county commissioners convened, and, after some consideration of the numerous questions raised before them respecting the validity of the prior proceedings, held that, by reason of the defects to which its attention was called, it had no jurisdiction to proceed in the premises, and the petition was ordered dismissed.

The grounds of this decision were: (1) That the notice of intention to circulate the petition, the initiatory step in the proceedings, was not posted as required by law; (2) that there was no sufficient proof of the publication of the auditor's call for the meeting of the board to act on the petition, the particular defect being that the affidavit of the publisher of one of the newspapers in which the call was published was defective, in that the seal of the county auditor, before whom the affidavit was taken, was not attached to the jurat; (3) that there was no showing that the notice calling the meeting of the board was published in all newspapers published in the county; and (4) that the notice calling the meeting of the board was not posted in all the towns of the county, as required by the statutes, in that it was not shown to have been posted in the different wards of the village of Red Lake Falls, it being insisted by the opponents of the proceeding that the word "town," as used in the statutes requiring the notice of meeting to be posted, includes wards of villages—in fact, all election districts in the county.

Subsequent to the dismissal of the petition by the board, proceedings in mandamus were brought by a legal voter of the county, on behalf of himself and all other legal voters, against the board of county commissioners, in which it was sought to compel the board to reconvene and hear and determine the petition upon its merits; it being insisted in support of that proceeding that the action of the board in dismissing the matter was not warranted by law, that it had full and complete jurisdiction to hear and determine the merits of the petition, and that the defects on which it relied in dismissing the same were without merit. The individual members of the board separately appeared in the mandamus proceeding; two of them putting in issue the allegations of

the writ, and raising the question as to the jurisdiction of the commissioners to act further in the matter. The action came on for trial in the court below at the March, 1906, term, when, after hearing the parties, judgment was ordered on the pleadings, in favor of the relators therein, commanding and directing the board of county commissioners to convene at the courthouse of the county on May 17, following, and then and there hear and determine the petition upon its merits, and make and sign the certificate required by law in such cases, if the requirements of the statutes were shown to have been fully complied with. Subsequently judgment was entered upon this order, but was thereafter amended by striking out May 17, the date fixed for the meeting of the board, and inserting in its place June 11, 1906.

Peremptory writ of mandamus was thereafter issued commanding the board to convene at the time stated, in compliance with which it convened at the courthouse, and, after investigation, determined that the petition for the election conformed in all respects to the statutory requirements, and ordered the county auditor to cause proper notice of an election to vote upon the proposition to be given. Whereupon this action was brought by plaintiff, a legal voter of the county, against the county auditor, to restrain and enjoin him from complying with the order. Simultaneously with the commencement of the action, a temporary injunction restraining the auditor from taking action in the premises was issued on the order of the court commissioner and served upon defendant. Defendant subsequently appeared and answered, setting forth all the facts, and upon his motion the trial court made an order dissolving the temporary injunction, whereupon plaintiff appealed.

Numerous questions are presented and discussed in the briefs of counsel; but, in the view we take of the case, it is unnecessary to cover more than two of them. It is urged by plaintiff that the proceedings for the removal of the county seat were defective, and conferred no jurisdiction upon the board of county commissioners to entertain the petition or to call a special election to vote upon the question, for substantially the same reasons as were presented to the board at the time it originally dismissed the proceedings. We need not consider any of these contentions, for it is clear that they were all determined, finally and conclusively, adverse to appellant's contention, by the judgment in

the mandamus proceeding. The several questions were there in issue, directly involved, and the judgment there rendered is final. It is elementary that all questions which were, or might have been, litigated in an action or proceeding of which the court has jurisdiction, are res judicata as to all parties thereto and their privies; and the rule applies to mandamus proceedings. Board of Supervisors v. Thompson, 122 Fed. 860, 59 C. C. A. 70; State v. Hard, 25 Minn. 460; Sauls v. Freeman, 24 Fla. 210, 4 South. 525, 12 Am. St. 190.

The mandamus proceeding in the case at bar was brought by a legal voter, on behalf of himself and all other legal voters in the county, as authorized by section 4053, R. L. 1905. The members of the board appeared, interposing answers, which the court, after hearing, held stated no defense; and the people at large must necessarily, in the absence of fraud or collusion, be concluded by the final judgment rendered therein. They were in privity with relator, within the meaning of the law, and bound equally with him. That such an action is authorized was held in Pencille v. State Farmers' Mut. Hail Ins. Co., 74 Minn. 67, 76 N. W. 1026, 73 Am. St. 326. The court had full and complete jurisdiction of the parties and subject-matter, and the question whether the board of county commissioners had jurisdiction to proceed further in the matter was the sole question in issue. If the court erred in that case, the remedy was by appeal. Any other rule in cases of this kind would enable every legal voter in the county by individual action to question the validity of proceedings for the removal of a county seat, and thus create interminable confusion and indefinite delay. The cases cited by appellant in opposition to this view are not in point.

There is no suggestion in the case at bar that the judgment in the mandamus proceeding was the result of fraud or collusion between the relator herein and the county commissioners. On the contrary, it fairly appears that the proceedings were conducted openly and in good faith, resulting in judgment against the county commissioners upon the merits of the controversy. The case is wholly unlike Kane v. Independant, 82 Iowa, 5, 47 N. W. 1076. In that case it appeared that the board of education had incurred an indebtedness beyond the limitations fixed by law, and suit had been brought against the district to recover the same; and, because of fraud and collusion between the school officers and the plaintiff, judgment was entered by default against the dis-

trict. The supreme court of Iowa held that the taxpayers of the district were not estopped from calling in question the validity of that judgment; that, as to them, the judgment was not res judicata. But the decision was placed squarely upon the ground of fraud and collusion between the school district officers and the plaintiff in the case. If there had been a good-faith contest of the liability of the district, and a determination against it, the court would undoubtedly have held the judgment final and conclusive as against, not only the board, but all taxpayers of the district.

In the case of Kelley v. Milan, 127 U. S. 139, 8 Sup. Ct. 1101, 32 L. Ed. 77, it appeared that the town board of supervisors had issued the bonds of the town in excess of the limit prescribed by statute; and in a suit upon the bonds by the holder thereof the town officers permitted a default judgment to be entered against them, the validity of which was questioned by a taxpayer. The court held, and properly so, that the action of the town officers was fraudulent, that they exceeded their authority in the issue of the bonds in the first instance, and that their action in doing so was invalid, and could not be made valid by confessing judgment against the town; in other words, that the town officers could not do indirectly what the law forbade them to do directly.

Other cases cited by counsel are similar to those just referred to and are not in point. It follows that all questions going to the jurisdiction of the board of county commissioners to act upon the petition for the removal of the county seat were determined adversely to the contention of appellant by the judgment in the mandamus proceeding. That judgment is final, and cannot be attacked collaterally, and the questions there in issue and determined cannot be further litigated in this or any other action.

It remains to be considered whether the judgment of the court in that proceeding, commanding the board of commissioners to appear on a fixed day to consider and determine the merits of the petition, without further directing to be given the notice required by section 396, R. L. 1905, was authorized by law. We are of opinion that the court exceeded its authority in this respect. The section of the statute just referred to requires notice of the time and place at which the board will convene to act upon a petition for the removal of a county seat to be given in the manner therein prescribed, to the end that all legal voters and taxpayers of

the county may have an opportunity of appearing before the board to call in question the validity of the proceedings, to challenge the eligibility of the signers of the petition, and to give to others an opportunity to withdraw their names, if they so elect. But by commanding the board to convene at a definite time, then and there to consider and act upon the petition, without giving this notice, the court deprived the citizens of the county of substantial rights, and to this extent the judgment is erroneous and invalid on its face. The judgment should have commanded the board to convene at a time to be designated by the auditor by the notice prescribed by the statute, and it had no authority to dispense with this notice, even though a previous notice had been given of a prior meeting. Such being the case, it follows that no valid certificate, to the effect that a proper petition for the removal of the county seat had been presented to the board, could be made by them, as commanded by the judgment. The county auditor was properly restrained from calling the election in question, and the temporary injunction should not have been dissolved.

Proceedings of this kind do not, however, become dormant or lapse by reason of the failure of public officers to take action within the time required by statute, particularly in cases where they are prevented from doing so by some action in court in which the validity of their proceedings is called in question. They may be required to resume the conduct of the proceedings from any point where thus interrupted or suspended. State v. Gieb, 66 Minn. 266, 68 N. W. 1081; Gile v. Stegner, 92 Minn. 429, 100 N. W. 101. In fact, it is their duty, where their proceedings have been thus temporarily interrupted, to resume the same immediately upon the determination of the litigation.

In the case at bar there is no reason why the county auditor and the board of county commissioners should not proceed, giving the notice required by section 396, fixing a time and place for hearing the petition, and then convening and determining its merits. But until that notice has been given, and an opportunity thus afforded the citizens of the county to be heard, no action looking to the calling of an election can be had. And if, on the return of this case to the court below, further proceedings shall be had in the matter, resulting in a determination by the board that the petition is sufficient under the statutes, the injunction issued in this action restraining the auditor from calling an election

will be inoperative. Its application must be limited to a notice of election based upon the present certificate of the county board.

The order appealed from, limited by the views here expressed, is reversed.